**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **FAVOR MINISTRIES, INC.** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 1:12-CV-00030** |
| | § | |
| | § | |
| | § | |
| **OLD REPUBLIC NATIONAL TITLE** | § | |
| **INSURANCE COMPANY;** | § | |
| **MAVERICK NATIONAL** | § | |
| **SERVICES-FLORIDA, LLC;** | § | |
| **BANK OF AMERICA, N.A.; and** | § | |
| **THE BANK OF NEW YORK MELLON,** | § | |
| *Defendants* | § | |
| **and** | § | |
| | § | |
| **REVOLA FONTAINE; and** | § | |
| **ISHMAEL LAW FIRM, P.C., D/B/A** | § | |
| **ISHMAEL CAPITAL TITLE,** | § | |
| *Third Party Defendants* | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT
AND ORIGINAL ANSWER TO COUNTERCLAIMS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, FAVOR MINISTRIES, INC. ("Favor Ministries") hereby files this Second Amended Complaint against Defendants OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY ("Old Republic"), MAVERICK NATIONAL SERVICES - FLORIDA, LLC ("Maverick"), THE BANK OF NEW YORK MELLON ("BNYM"), and BANK OF AMERICA, N.A. ("Bank of America"), and Third-Party Defendant REVOLA FONTAINE ("Fontaine"), and Original Answer, and would respectfully show the Court as follows:

## I. PARTIES

1.1.    Plaintiff Favor Ministries is a Nevada corporation doing and authorized to conduct business in the State of Texas.

1.2.    Defendant Old Republic is a Minnesota company doing and authorized to conduct business in the State of Texas.  Old Republic has appeared and answered in this cause.

1.3.    Defendant Maverick is a Florida limited liability company doing and authorized to conduct business in the State of Texas.  Maverick has appeared and answered in this cause.

1.4.    Third Party Defendant Fontaine is an individual resident of Georgia.  Fontaine has appeared and answered in this cause.

1.5.    Third Party Defendant ISHMAEL LAW FIRM, P.C., d/b/a UPTOWN CAPITAL TITLE (call them "Ishmael") is a Texas professional corporation.  Ishmael has appeared and answered in this cause.

1.6.    Defendant Bank of America is a federally-chartered bank with its headquarters in Charlotte, North Carolina.  Bank of America may be served with process by serving its Texas registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201.

1.7.    Defendant BNYM is a New York state banking corporation with its headquarters in  New York, New York.  BNYM may be served with process by serving its registered agent, Stephen B. Wells, One Wall Street, New York, NY 10005.

## I. JURISDICTION

2.1.    The United States District Court for the Western District of Texas, Austin Division has original subject matter jurisdiction under 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties in that every Defendant is now, and was at the time the cause of action accrued and was commenced, diverse in citizenship from every Plaintiff and because the

matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

2.2.     The Court has personal jurisdiction over Defendants Bank of America and BNYM because said Defendants purposefully availed themselves of the privileges and benefits of conducting business in Texas. The remaining Defendants and Third Party Defendants have entered general appearances in this cause and have thereby waived any challenge to personal jurisdiction.

### III. VENUE

3.1.     Venue is proper in the Western District of Texas, Austin Division under Title 28 U.S.C. §1391(a)(2) as a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas, specifically Austin, Travis County, Texas.

### IV. OPERATIVE FACTS

A. *The Purchase Agreements.*

4.1.     In 2011, Favor Ministries entered into two separate residential Purchase and Sale Agreements ("Agreements") for the acquisition of two residential properties from Fontaine. The properties at issue are legally known as:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 33 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, BEING ESTATE NUMBER 18, MONTEAGLE SUBDIVISION ACCORDING TO PLAT RECORDED IN PLAT BOOK 8479, PAGE 547, DEKALB COUNTY, GEORGIA RECORDS WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREBY REFERENCE. SAID PROPERTY IS KNOWN AS 461 MONTEAGLE TRACE, STONE MOUNTAIN, DEKALB COUNTY, GEORGIA 30087.

located at 461 Monteagle Trace, Stone Mountain, Georgia 30087 (the "Monteagle Property"); and

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 23 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE INTERSECTION OF THE NORTHERLY RIGHT OF WAY OF ROCKBRIDGE ROAD AND THE WESTERLY LINE OF LAND LOT 23; THENCE 175.7 FEET ALONG THE SAID NORTHERLY RIGHT OF WAY OF ROCKBRIDGE ROAD TO THE POINT OF BEGINNING; THENCE NORTH 09 DEGREES 24 MINUTES 26 SECONDS EAST A DISTANCE OF 353.80 FEET TO A POINT; THENCE SOUTH 89 DEGREES 35 MINUTES 35 SECONDS EAST A DISTANCE OF 149.25 FEET TO A POINT; THENCE SOUTH 07 DEGREES 12 MINUTES 39 SECONDS WEST A DISTANCE OF 380.00 FEET TO A POINT; THENCE NORTH 79 DEGREES 40 MINUTES 53 SECONDS WEST, A DISTANCE OF 162.00 FEET TO THE POINT OF BEGINNING.

SUBJECT TO ALL MATTERS OF RECORD.

BEING THE SAME PROPERTY AS CONVEYED TO QUARTZ ENTERPRISES, LLC BY WARRANTY DEED FROM REVOLA FONTAINE, RECORDED MARCH 6, 2010 IN BOOK 21880 PAGE 186 IN DEKALB COUNTY, GEORGIA.

located at 6454 Rockbridge Road, Stone Mountain, Georgia 30087 (the "Rockbridge Property").

4.2.    Paragraph 8.A. of the Agreements warranted that the seller would deliver "good and marketable title to said Property by general warranty deed", subject to certain inapplicable exceptions.  Paragraph 18.D.(2) of the Agreements provided that the warranties of title would survive closing.

4.3.    As the parties structured their deal, the total purchase price for the two properties was $245,000.00.[1]  Favor Ministries paid $1500 earnest money, and the balance of the purchase price would be 100% seller financed for one year at 5% interest, with monthly payments of $1300 and the balance due at the end of 12 months.

4.4.    Favor Ministries and Fontaine deposited the Agreements with Third Party Defendant Ishmael in Austin, Texas – which, according to Paragraph 7 of the Agreements, represented Fontaine.

---

[1]  The Agreements stated that the purchase price was $245,000.00 for the Monteagle Property and $0 for the Rockbridge Property.  However, the parties intended that the properties would be sold together.

4.5.    On or around May 20, 2011, Maverick, on behalf of Old Republic, issued a Commitment

for Title Insurance for the Monteagle Property (Exhibit "G" to Plaintiff's Original Complaint

[Doc. 1]) ("Monteagle Title Commitment").    Schedule B, Section I, Paragraph 7 of the

Monteagle Title Commitment listed, as relevant, the following "additional requirements":

> *Please discharge of record mortgage made by [Fontaine] to Bayrock Mortgage*
> *Corporation recorded January 9, 2006 in Book 18300 page 753.*
>
> *Please discharge of record mortgage made by [Fontaine] to Bayrock Mortgage*
> *Corporation recorded January 9, 2006 in Book 18300 page 781 to secure*
> *$50,000.00 (CREDIT LINE) … .*

In addition, Schedule B, Section II, Paragraph 7 of said Commitment stated in relevant part:

> *Any matters listed as requirements on Schedule B-I that are not resolved to the*
> *satisfaction of Company will be shown as an exception on final policy [.]*

4.6.    On or around May 21, 2011, Maverick, on behalf of Old Republic, issued a Commitment

for Title Insurance for the Rockbridge Property ("Rockbridge Title Commitment").    A true and

correct copy of the Rockbridge Title Commitment is attached to this Second Amended

Complaint as *Exhibit "A"*.    Schedule B, Section I of the Rockbridge Title Commitment stated,

"THERE ARE NO OPEN MORTGAGES OF RECORD".

4.7.    Closing on the two properties took place at Ishmael's office in Austin, Texas on or

around July 12, 2011.  Favor Ministries paid the closing costs and executed a Deed to Secure

Debt (commonly known in Texas as a "deed of trust") and a Note to Fontaine in the amount of

$245,000.00 in accordance with the terms of their Agreements.  In order to proceed with closing

and to insure title to the Monteagle Property, Maverick and Old Republic required Fontaine to

sign an "Affidavit of Indemnity" (Exhibit "A" to Old Republic's Third-Party Complaint [Doc.

4]) prior to closing, which read in relevant part:

*"3. I executed a "Mortgage" with BayRock Mortgage on December 30, 2005 in the amount of $464,000.00 … .  This Mortgage was recorded 06/09/2006 in Book 18300 Page 753, Fulton County Real Property Records.[2]*

*4. This Mortgage … was then assumed by Bank of America … .*

*5. I filed Chapter 7 "Bankruptcy" on December 30, 2010, Case Number 10-98793-JB.*

*6. I included the Mortgage referenced above in the Bankruptcy, which was discharged May 20, 2011.*

*7. The Mortgage referenced above has been eliminated and no payments are required.*

*8. I certify that [the Monteagle Property] is free and clear of any liens or encumbrances.  I will indemnify and hold [Maverick and Old Republic] harmless of any damages that may result in the statements made above.*

*/s/ Revola Fontaine"*

4.8.     The title policies for each property, issued on July 25, 2011, are Owner Policy of Title Insurance No. OX08397843 ("Monteagle Policy") in the amount of $245,000.00 and Owner Policy of Title Insurance No. OX08397844 ("Rockbridge Policy") in the amount of $300,000.00 (Exhibits "A" and "B" to Plaintiff's Original Complaint [Doc. 1]).  (The standard form "Covered Risks", "Exclusions From Coverage", and "Conditions and Stipulations" for both policies is attached hereto as *Exhibit "B"*.)  Plaintiff is the named insured under both policies.  Plaintiff paid $735 for the Monteagle Policy and $900 for the Rockbridge Policy.  Importantly, for purposes of this Complaint, the "Exceptions From Coverage" (Schedule B) on both policies <u>do not identify any mortgage on either property</u>.[3]  In addition, there are no endorsements, and

---

[2]  Plaintiff does not know why: (1) the recording date of the Bayrock mortgage is stated differently on the Affidavit of Indemnity and the Monteagle Title Commitment; (2) the Bayrock mortgage is said to be recorded in Fulton County, whereas the Monteagle Property is in DeKalb County; or (3) the affidavit makes no mention regarding the existence or discharge of the $50,000 secured line of credit as described in the Monteagle Title Commitment.

[3]  Item 11 in Schedule B states, "Any matters listed as requirements on Schedule B-I that are not resolved to the satisfaction of Company will be shown as an exception on final policy."  Exception "1" in Schedule B (there is no Exception "I" or "Schedule B-I") refers to certain matters "which are not shown by the public records", and is therefore not applicable to this Complaint.

nothing else within the policy excepting to any existing mortgage or other recorded lien. Paragraph 15 of the "Conditions and Stipulations" states that, "This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company."

4.9.     Favor Ministries incurred the Note and Deed to Secure Debt in reliance on Fontaine's contractual warranty of title and Old Republic and Maverick's contractual agreement to insure title.   At no time prior to November, 2011 was Favor Ministries aware that Old Republic and Maverick intended to deny coverage for any pre-existing mortgage.

4.10.   On September 27, 2011, Bank of America and BNYM delivered a Notice of Sale Under Power to the Monteagle Property.[4]  (Exhibit "C" to Plaintiff's Original Complaint [Doc. 1]).  The notice declared acceleration of a secured loan on the Monteagle Property in the principal amount of $442,817.13, and stated that "foreclosure proceedings are being instituted".  On November 7, 2011, Plaintiff forwarded copies of the notice to Old Republic and Maverick, and requested coverage under the Monteagle Policy.  Maverick responded by letter dated November 16, 2011 (Exhibit "E" to Plaintiff's Original Complaint [Doc. 1]), claiming the Monteagle Policy had been "issued in error", and purporting to issue a "correction policy" that excluded the lien claimed by Bank of America.

4.11.   On October 17, 2011, Bank of America delivered a notice to the Rockbridge Property announcing that a loan in the amount of $173,995.34 had been referred for foreclosure  (Exhibit "D" to Plaintiff's Original Complaint [Doc. 1]).   On November 7, 2011, Plaintiff forwarded copies of the notice to Old Republic and Maverick, and requested coverage under the Rockbridge Policy.  Maverick responded by letter dated November 16, 2011, claiming that no

---

[4]  Although the letter was addressed to both Favor Ministries and Fontaine, Favor Ministries and its principals do not reside at that address and did not receive the notice until later.

mortgage "was ever recorded for this property.  Therefore, Bank of America's assertion of a claim is invalid."[5]  A true and correct copy of the letter is attached to this Second Amended Complaint as *Exhibit "C"*.

4.12.   Despite Plaintiff's request, Maverick and Old Republic have failed and refused to resolve or discharge the liens asserted by Bank of America and have wholly denied coverage under the title policies.

4.13.   As a result of Maverick and Old Republic's denial of coverage, Bank of America: (1) with BNYM, has foreclosed its alleged lien on the Monteagle Property; and (2) continues to assert a lien on the Rockbridge Property, notwithstanding Maverick's allegation that such claim "is invalid". Defendants' actions and inactions have caused a total loss of Plaintiff's investment in the Monteagle Property, and continue to harm and jeopardize Plaintiff's investment in the Rockbridge Property due to clouded title, including, among other losses: (1) inability to finance or resell; (2) lost rents; and (3) attorney's fees and related expenses incurred in effort to clear title.

4.14.   All conditions precedent to the maintenance of this action and to the recovery of the relief sought have been performed or have occurred.[6]

---

[5]  Maverick may have changed its tune on this allegation.  Paragraph 10 of Maverick's Third Party Complaint against Revola Fontaine [Doc. 8] concedes that the Rockbridge Property is "possibly encumbered" with a lien recorded in Deed Book 20391, page 730, deed records of DeKalb County, Georgia.  See also, *id.* ¶¶ 20, 24.

[6]  Plaintiff specifically denies the contention of Old Republic and Maverick that the Monteagle Title Commitment created a "condition precedent" to recovery in this case.  As the Michigan Supreme Court has explained:

> [A] commitment is an agreement between an insurance company and a potential insured that, if the potential insured meets certain conditions, the insurance company will issue a policy. Such conditions are ones that the insured must meet before the insurer is obligated to fulfill his contractual duty under the commitment to issue a policy. In other words, such conditions relate to whether the insurer must issue a policy to the insured. Accordingly, such conditions do not serve as conditions precedent to the *effectiveness* of a policy; rather, they serve as conditions precedent to the insurance company's *obligation to issue* a policy. Therefore, … when an insured fails to meet one of these conditions, the insurer has no obligation to issue a policy; but if, despite this failure, the insurer *does* issue a policy, the policy is nonetheless effective.

## V. CAUSES OF ACTION RELATED TO MONTEAGLE PROPERTY

5.1.     Bank of America and BNYM have foreclosed on the Monteagle Property, which they acquired in the foreclosure.  Plaintiff has lost its investment and seeks: (1) rescission of the sale from Fontaine to Plaintiff; (2) damages against Fontaine for breach of contract/warranty; and (3) damages against Maverick and Old Republic for breach of the insuring agreement and violation of the Texas Insurance Code (or the Georgia Insurance Code, if applicable).  These causes of action are more fully stated below.

### A. Breach of Contract/Warranty Against Fontaine

5.2.     Defendant Fontaine is liable to Plaintiff for breach of contract and breach of warranty. Specifically, Paragraph 8.A. of the Purchase and Sale Agreement for the Monteagle Property covenanted and warranted that Fontaine would convey "good and marketable title".  Plaintiff seeks all relief available under applicable Texas and/or Georgia law for breach of this covenant and warranty, including one or more of the following: (1) the difference in value between the Monteagle Property with clear title (as warranted), and the value of said property with clouded title (as delivered); (2) lost rents and lost rental value of the Property; and (3) reasonable and necessary attorney's fees.

### B. Rescission Against Fontaine, Bank of America and BNYM

5.3.     "The remedy of rescission for nonperformance is appropriate when the breach is so substantial and fundamental as to defeat the object of the contract."  *Lanier Home Center, Inc. v. Underwood*, 557 S.E.2d 76, 79 (Ga.App. 2001).  See also, *Humphrey v. Camelot Retirement Community*, 893 S.W.2d 55, 59 (Tex.App.—Corpus Christi 1994, no writ).  Fontaine's failure to deliver clean title to the Monteagle Property goes to the essence of the agreement, and is

---

*Archambo v. Lawyers Title Ins. Corp.*, 646 N.W.2d 170, 175 (Mich. 2002) (emphasis in original).

therefore grounds for rescission of sale.  Accordingly, Plaintiff seeks the equitable remedy of rescission and recovery of the purchase price.

5.4.   Plaintiff believes that legal title to the Monteagle Property is currently held by Bank of America and/or BNYM, who took title with full knowledge of the facts underlying the current dispute, and are therefore not a "bona fide purchaser", as that term is used in property law.  The equitable remedy of rescission is available against subsequent owners who are not bona fide purchasers.  *Cistola v. Daniel*, 598 S.E.2d 535, 540-541 (Ga.App. 2004); *Guinn v. Lokey*, 249 S.W.2d 185, 189 (Tex. 1952).  Accordingly, Plaintiff seeks an order rescinding of the foreclosure sale to Bank of America and/or BNYM under principles of equity (which may include a return to Bank of America and/or BNYM of any consideration paid by it in that sale).

### B.   Breach of Contract and Statutory Claims Against Old Republic and Maverick

5.5.   Defendants Old Republic and Maverick are liable under the Monteagle Policy purchased by Plaintiff.  Said policy expressly insures against "[a]ny defect in or lien or encumbrance on the Title."  The lien asserted, and foreclosed, by Bank of America and BNYM is a covered title problem, and is not excluded from coverage under the terms of the policy or any endorsement. Despite proper notice, Defendants Old Republic and Maverick have failed and refused to discharge the encumbrance or defend the title.   Plaintiff seeks all relief available under applicable Texas and/or Georgia law for breach of the insuring agreement, including one or more of the following: (1) recovery of the full value of the Monteagle Policy; (2) an order of specific performance requiring Defendants Old Republic and Maverick to deliver clear title Monteagle Property to Plaintiff; (3) the difference in value between the Monteagle Property with clear title

(as insured), and the value of said property with clouded title (as delivered); (4) lost rents and lost rental value of the Property; and (5) reasonable and necessary attorney's fees.

5.6.  Section 541.060(a), Texas Insurance Code, prohibits a number of acts by an insurer defined as "unfair settlement practices", including:

> (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>
> (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of … (A) a claim with respect to which the insurer's liability has become reasonably clear; …
>
> (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim … ;
>
> \*       \*       \*
>
> (6)  refusing, failing, or unreasonably delaying a settlement offer under applicable first-party coverage on the basis that … third parties are responsible for the damages suffered …; [and]
>
> (7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim … .

5.7.  Section 541.151(1), Texas Insurance Code, authorizes a suit for damages against an insurer for unfair settlement practices.  Section 541.152, Texas Insurance Code, authorizes an award of actual damages, reasonable attorney's fees, and (if the act is committed knowingly) exemplary damages of up to three times actual damages.  *See also*, Ga. Code Ann. §33-4-6 (statutory cause of action for "bad faith" refusal of claim).

5.8.  Defendants Old Republic and Maverick's acts and omissions in refusing coverage of covered title risks, failing to properly research or analyze the impact of Fontaine's bankruptcy on the validity of the mortgage, attempting to substitute the "clean title" policy with a "defective title" policy, misrepresenting the terms of the policy and denying coverage based on misrepresented terms, and other acts and omissions constitute bad faith and violations of the aforementioned prohibitions against unfair settlement practices.  Plaintiff seeks an award of

actual and exemplary damages for these violations and reasonable attorney's fees as provided by

law.

## VI. CAUSES OF ACTION RELATED TO ROCKBRIDGE PROPERTY

6.1.    Bank of America has asserted – and, to Plaintiff's knowledge, continues to assert – that

the Rockbridge Property is encumbered with a mortgage.  Maverick has denied that such an

encumbrance exists, but has nevertheless refused to cover the claim asserted by Bank of

America.  Plaintiff does not currently know which side is right.  Accordingly:

(1) If Bank of America's assertion of a lien <u>is correct</u>, Plaintiff seeks relief against Fontaine
for rescission and/or breach of contract/warranty for failing to deliver clear title.

(2) If Bank of America's assertion of a lien <u>is not correct</u>, Plaintiff seeks relief against Bank
of America for slander of title.

(3) <u>In either case</u>, Maverick and Old Republic breached the insuring agreement and relevant
consumer protection provisions of the Texas Insurance Code (or the Georgia Insurance
Code, if applicable) by refusing to defend or discharge the claims asserted by Bank of
America.

These causes of action are more fully stated below.

## A. <u>Rescission and/or Breach of Contract/Warranty Against Fontaine.</u>

6.2.    In the event Bank of America's assertion of a lien is found to be valid, Defendant

Fontaine is liable to Plaintiff for breach of contract and breach of warranty.  Specifically,

Paragraph 8.A. of the Purchase and Sale Agreement for the Rockbridge Property covenanted and

warranted that Fontaine would convey "good and marketable title".  Plaintiff seeks all relief

available under applicable Texas and/or Georgia law for breach of this covenant and warranty,

including one or more of the following: (1) the difference in value between the Rockbridge

Property with clear title (as warranted), and the value of said property with clouded title (as

delivered); (2) lost rents and lost rental value of the Property; and (3) reasonable and necessary attorney's fees.

6.3.   In addition, or in the alternative, in the event Bank of America's assertion of a lien is found to be valid, Fontaine's failure to deliver clean title to the Rockbridge Property goes to the essence of the agreement, and is therefore grounds for rescission of sale.  Accordingly, Plaintiff seeks the equitable remedy of rescission and recovery of the purchase price.

### B.  Contract, Negligence and Statutory Claims Against Old Republic and Maverick.

6.4.   The title commitment on the Rockbridge Property expressly stated that "no open mortgages of record" attached to said property.   Defendants Old Republic and Maverick recommitted to this view in their November 16, 2011 denial-of-coverage letter.  Their pleadings in the current case are ambivalent as regards the existence of such a lien.[7]   In any event, regardless of whether the encumbrance is real or not, it is beyond dispute that Bank of America's claims of a lien are a cloud on Plaintiff's title.  Despite proper notice, Defendants Old Republic and Maverick have failed and refused to discharge the claim or defend the title.  Accordingly, Old Republic and Maverick are liable under the Rockbridge Policy purchased by Plaintiff. Plaintiff seeks all relief available under applicable Texas and/or Georgia law, including one or more of the following:

> (A)  If the lien asserted by Bank of America is <u>not</u> valid, Plaintiff seeks to enforce the insuring agreement, including an order:  (1) of specific performance requiring Defendants Old Republic and Maverick to remove the wrongfully-asserted cloud on title to the Rockbridge Property; (2) awarding Plaintiff lost rents suffered as a direct result of the wrongful lien; and (3) awarding Plaintiff reasonable and necessary attorney's fees; or

> (B)  If the lien asserted by Bank of America <u>is</u> valid:

---

[7]  Compare MAVERICK'S ORIGINAL ANSWER [Doc. 6] at ¶¶ 44, 46 (alleging lien was on different property); and MAVERICK'S THIRD PARTY COMPLAINT [Doc. 7] at ¶¶ 10, 20, 24 (alleging Rockbridge Property was "possibly encumbered" with lien).

(i) <u>Policy Coverage</u>.  Plaintiff seeks an order: (1) awarding Plaintiff the full face value of the Rockbridge Title Policy, or the amount of the lien, whichever is less; (2) of specific performance requiring Defendants Old Republic and Maverick to remove and discharge the lien on the Rockbridge Property; (3) awarding Plaintiff lost rents and lost rental value of the Property; (4) awarding Plaintiff the difference in value between the Rockbridge Property with clear title (as insured), and the value of said property with clouded title (as delivered); and (5) awarding Plaintiff reasonable and necessary attorney's fees;

(ii) <u>Negligence, Negligent Misrepresentation and Deceptive Trade Practices</u>.  Under both Texas and Georgia law, an issuer of a title commitment owes a "duty of reasonable care and competence to parties who rely upon the information" therein and may be held liable for negligently disclosing the absence of title defects. *Razette v. Preferred Research, Inc.*, 415 S.E.2d 25, 26 (Ga.App. 1992).  See also, *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 77 (Tex. 1993).  In addition, where, as here, the title commitment expressly states that there are "no open mortgages", the title insurer may also be held liable under the Texas Deceptive Trade Practices – Consumer Protection Act. *Id.*.  Plaintiff relied, to its detriment, on the affirmative misrepresentation of Maverick and Old Republic regarding the clear-title status of the Rockbridge Property, which misrepresentation was made intentionally, recklessly or negligently.  Plaintiff seeks all damages proximately caused by said misrepresentation, together with exemplary damages and attorney's fees under the Texas Deceptive Trade Practices – Consumer Protection Act, if applicable; and/or

(iii) <u>Statutory Insurance Violations</u>.  Old Republic and Maverick are guilty of "bad faith" and "unfair settlement practices" as described in Ga. Code Ann. §33-4-6 and Tex. Ins. Code §541.060(a)(1), (2)(A), (3), (6), and (7).  Plaintiff seeks recovery of exemplary damages and attorney's fees as set forth Ga. Code Ann. §33-4-6 and/or Tex. Ins. Code §541.152.

**C. <u>Slander of Title Against Bank of America.</u>**

6.5.  If – as previously alleged by Old Republic and Maverick –the lien asserted by Bank of America is <u>not</u> valid, then Defendant Bank of America's assertion of the invalid claim against the Rockbridge Property amounted to an utterance and publication of false words, disparaging the Plaintiff's title to the Property.  At all material times, Bank of America acted with malice, making the false claim deliberately and without any reasonable grounds for doing so.  As a direct and proximate result of Bank of America's malicious claim and interference with the Plaintiff's rightful interest in the Property, Plaintiff has been harmed in its use and enjoyment of the

Rockbridge Property.  Specifically, and without limitation, Bank of America's invalid claim was delivered to the Rockbridge Property and received by the tenants who resided there, who, believing the claim to be valid, ceased paying rent to Plaintiff; and further, that such property is unmarketable so long as Bank of America continues its wrongful claims.

6.6.   Accordingly, if Bank of America's claim of a lien on the Rockbridge Property is invalid, Plaintiffs seek damages for Bank of America's slander of title pursuant to Texas common law and/or Ga. Code Ann. §51-9-11 in the amount that may be proven at trial.

## VII. DAMAGES

7.1.   As a direct and proximate result of the above and foregoing, Plaintiff seeks damages as follows:

      a)      The amount of coverage for the Monteagle Policy;

      b)      The amount of coverage for the Rockbridge Policy;

      c)      Additional actual damages as stated above;

      d)      Reasonable and necessary attorney's fees and costs; and

      e)      Exemplary damages as provided by law.

7.2.   The damages sought exceed the sum of $75,000.00, exclusive of interest and costs, and are within the jurisdictional limits of this court.

## VIII.  ORIGINAL ANSWER TO COUNTERCLAIMS OF OLD REPUBLIC AND MAVERICK

8.1.   <u>Summary.</u>  Maverick and Old Republic were not duped.  They sold the Monteagle Policy to Plaintiff with <u>full knowledge</u> of the recorded mortgage owned by Bank of America and BNYM. For reasons that defy comprehension, instead of relying on the deed records, Maverick and Old Republic accepted Fontaine's averment that the mortgage on the Monteagle Property had been discharged in bankruptcy.  As a legal matter – and as Old Republic and Maverick, as title

insurers, certainly should have known – that averment was simply incorrect.  See *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 55 (1991) (Bankruptcy Code "provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy").  To be sure, this was a serious mistake; but it was an <u>underwriting mistake</u> by the insurer, not a scrivener's error, and certainly not "fraud" on the part of the insured.[8]  Therefore, Old Republic's and Mavericks defenses and counterclaims are without merit.

8.2.   <u>Answer to Old Republic's Counterclaim</u>.  In answer to the enumerated paragraphs on pages 8-10 of the counterclaim of Old Republic [Doc. 3], Plaintiff would state as follows:

> (1)  Plaintiff admits the allegation in Paragraph 1.
>
> (2)  Plaintiff admits the allegation in Paragraph 2.
>
> (3)  Plaintiff admits the allegations in Paragraph 3, but denies that Old Republic is entitled to the relief requested.
>
> (4)  Plaintiff denies the allegations in Paragraph 4.
>
> (5)  Plaintiff admits the allegations in Paragraph 5.
>
> (6)  Plaintiff denies the allegations in Paragraph 6.  Specifically, Plaintiff would show that the failure to list the Monteagle mortgage as an exception to coverage was not a "mutual mistake", but rather was a unilateral mistake by the underwriters for Maverick and Old Republic.  See *Nationwide Life Ins. Co.*, 579 F.3d at 319 (to hold insured responsible for insurer's underwriting error "would make title insurance a Barmecide feast").  In addition, Plaintiff specifically denies any allegation that the discharge of the Monteagle mortgage is a "condition" to the enforceability of the title policy.  See *Archambo*, supra, at n. 6.
>
> (7)  Plaintiff denies the allegations in Paragraph 7.

8.3.  <u>Answer to Maverick's Counterclaim</u>.  In answer to the enumerated paragraphs on pages 11-15 of the counterclaim of Maverick [Doc. 6], Plaintiff would state as follows:

---

[8]   See, eg., *Lawyers Title Ins. Corp. v. First Federal Sav. Bank & Trust*, 744 F.Supp. 778, 787 (E.D.Mich 1990): "The purpose of mortgage title insurance is to make the insurer the guarantor of its own title search."  Accord, *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, 579 F.3d 304, 319 (3rd Cir. 2009).

(1) Plaintiff admits the first two sentences of Paragraph 1. Plaintiff denies the remainder of Paragraph 1.

(2) Plaintiff admits the allegations in Paragraph 2 in part and denies them in part. Specifically, Plaintiff would show that the $245,000 purchase price was intended by the buyer and seller as the total consideration for both the Monteagle Property and the Rockbridge Property. Plaintiff admits that the "purported" price is as stated by Maverick (as reflected on the Purchase and Sale Agreements), but denies this reflects the parties' full agreement.[9] Plaintiff denies the final parenthetical in Paragraph 2.

(3) Plaintiff admits the allegation in Paragraph 3.

(4) Plaintiff admits the allegation in Paragraph 4.

(5) Plaintiff admits the allegation in Paragraph 5, except that the proper citation is "28 U.S.C. §1332", not "28 U.S.C. §132".

(6) Plaintiff admits the allegation in Paragraph 6.

(7) Plaintiff admits the allegations in Paragraph 7, but denies that Maverick is entitled to the relief requested.

(8) Plaintiff denies the allegations in Paragraph 8.

(9) Plaintiff admits the allegations in Paragraph 9.

(10) Plaintiff denies the allegations in Paragraph 10. Specifically, Plaintiff would show that the failure to list the Monteagle mortgage as an exception to coverage was not a "mutual mistake", but rather was a unilateral mistake by the underwriters for Maverick and Old Republic. In addition, Plaintiff specifically denies any allegation that the discharge of the Monteagle mortgage is a "condition" to the enforceability of the title policy. See *Archambo*, supra, at n. 6.

(11) Plaintiff denies the allegations in Paragraph 11.

(12) Plaintiff denies the allegations in Paragraph 12. Specifically, Plaintiff denies that it made any knowingly or recklessly false statement or material omission, or that Maverick reasonably relied on any such statement. To the extent such allegation relates to the "Closing Affidavit" referenced in Paragraph 41 (page 8) of Maverick's answer [Doc. 6], Plaintiff would show that it did not "know" of any cloud on title; instead, Plaintiff reasonably relied on the expertise of Maverick and Old Republic, who (apparently based on nothing but an incorrect legal statement by Fontaine, a layperson) erroneously concluded that Fontaine's mortgage on the Monteagle Property had been discharged in bankruptcy.

---

[9] *See* n. 1, *supra*.

(13)  Plaintiff denies the allegations in Paragraph 13.  Specifically, Plaintiff denies that it misreported the purchase price to Maverick, or that it "now sues Maverick" for $500,000.00, or that Maverick "suffered damages as a result" or that Plaintiff made any "misleading and calculated actions".

8.4.    <u>Affirmative Defenses to Counterclaims</u>.    By way of affirmative defense to the counterclaims of Maverick and Old Republic, Plaintiff would show as follows:

(1)  As to the counterclaims for "reformation of contract", Plaintiff would show that this equitable remedy is barred by the equitable defenses of estoppel, waiver, and "unclean hands".  Plaintiff would further show that the "mistake" (if any) was an error of law, to wit: whether the mortgage on the Monteagle Property could be discharged in bankruptcy. Old Republic and Maverick, as title insurers are, by definition, responsible for making such determinations; therefore "reformation of contract" is not available to correct their underwriting mistake.

(2)  As to Maverick's counterclaim for "fraud", Plaintiff affirmatively pleads that such claim is barred by waiver, estoppel, and the "parol evidence rule".  Specifically, the "merger clause" in Paragraph 15 of the title policies' "Conditions and Stipulations" bars Maverick's claim.  *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784-785 (Ga. 2001).

## IX. JURY DEMAND

37.    Plaintiff hereby makes application and requests that this case be set for a trial by jury.

## X. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that after a trial herein, Plaintiff have and recover against the Defendants the following relief:

(1)    Judgment against Defendants for all of Plaintiff's actual damages, both general and special, as described above;

(2)    Specific performance of the insuring agreements, as described above;

(3)    Rescission of sale of property, as described above;

(4)    Pre-judgment and post-judgment interest pursuant as allowed by law;

(5)    Exemplary damages to the extent permitted by law;

(6)    Reasonable and necessary attorney's fees;

(7)    Costs of court; and

(8)    Such other relief to which Plaintiff may be entitled, both general and special.

Respectfully submitted,

ANATOLE BARNSTONE
LAW OFFICE OF ANATOLE BARNSTONE
State Bar #: 00793308
713 West 14th Street
Austin, TX 78701
Phone: 512.327.2600
Fax: 512.482.8095

_____/s/Anatole Barnstone_____
Anatole Barnstone
*Attorney for Favor Ministries, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the party/parties listed below was(were) served the foregoing document(s) via the Court's ECF system on February __8__, 2013.

Andrew Oliver
Oliver & Oliver, P.C.
48 East Avenue
Austin, TX 78701
*Fax: 512.551.0330*
Attorney for Old Republic National Title Insurance Company

Darwin McKee
314 Highland Mall Boulevard, Ste. 104
Austin, TX 78752
*Fax: 512.233.5111*
Attorney for Revola Fontaine

Daniel J. Brustkern
Brustkern Flocos & Associates, LLP
611 West 14th Street, Ste. 200
Austin, TX 78701
*Fax: 512.467.6550*
Attorney for Maverick National Services-Florida, LLC.

David M. Macdonald
Patrick F. Madden
Macdonald Devlin, PC
3800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
*Fax: 214.747.0942*
Attorneys for Ishmael Law Firm d/b/a Uptown Capital Title


_____/s/Anatole Barnstone_____
Anatole Barnstone

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A

Commitment No.: **7006582**

1.     Effective Date: **May 21, 2011,**

2.     The policy or policies to be issued are          POLICY AMOUNT

      (a)     ALTA Owner's Policy - (10-17-92)        **$210,000.00**
              Proposed Insured:     **Favor Ministries**

      (b)     ALTA Loan Policy - (10-17-92)
              Proposed Insured:

3.     The estate or interest in the land described or referred to in this Commitment and covered herein is:

      **Fee Simple**

4.     Title to the **Fee Simple** estate or interest in said land is at the effective date hereof vested in:

      **Title is vested in Organic Family Trust by Quit Claim Deed from Quartz Enterprises, LLC datEd june 31, 2010 recorded August 2, 2010 in Book 22069 page 179**

5.     Legal description of the land:

      **All that certain parcel of land situated in Land Lot 23, 18th District, County of Dekalb, State of Georgia, being known and designated as Lot 1, Revola Fontaine Property as described in Deed Book 20296 at page 734, dated September 11, 2007 and recorded September 12, 2007, in Dekalb County**

Countersigned
**MAVERICK NATIONAL SERVICES - FLORIDA, LLC**

By: _____

**Old Republic National Title Insurance Company**       This commitment is invalid unless the            Page 1
                                          **Insuring Provisions and Schedules A &**
                                          **B are attached.**

**SCHEDULE A -- CONTINUED**                                    Commitment No.:  **7006582**

### EXHIBIT "A"

**All that certain parcel of land situated in Land Lot 23, 18th District, County of Dekalb, State of Georgia, being known and designated as Lot 1, Revola Fontaine Property as described in Deed Book 20296 at page 734, dated September 11, 2007 and recorded September 12, 2007, in Dekalb County**

**Old Republic National Title Insurance Company**          **This commitment is invalid unless the
Insuring Provisions and Schedules A &             Page 2
B are attached.**

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B - SECTION I

Commitment No.:  **7006582**                                                   Effective Date:  **May 21, 2011**

The following are the requirements to be complied with:

**The following requirements must be met:**

a.      **Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.**

b.      **Pay us the premiums, fees and charges for the policy.**

c.      **Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded:**

   **Deed from Organic Family Trust to Favor Ministries**

d.      **You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.**

e.      **In the event that the proceeds of the loan to be secured by the mortgage to be insured are not to be fully disbursed at Closing, the Company must be notified and this Commitment will then be modified accordingly.**

**Additional requirements are as follows:**

1.      **Document(s) satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded:**

2.      **Subject to recognizances, if any, filed against the mortgagor or the property described in Schedule A.**

3.      **Proof of identity, legal age, competency and marital or civil union status of all parties to this transaction.**

4.      **An Affidavit of Title executed by the seller(s) must be obtained and the facts set forth therein must be considered.**

5.      **Evidence that the subdivision of which the premises in question form a part has been legally approved (including county planning board approval, if required) is to be submitted prior to closing.**

6.      **Proof is required that all charges or assessments levied against the property have been paid.**

7      **THERE ARE NO OPEN MORTGAGES OF RECORD**

8      **Tax Search shows:**

   **2010 taxes are PAID**
   **PLEASE CONTACT TAX COLLECTOR FOR ANY/ALL TAXES DUE PRIOR TO CLOSING.**

9.      **Bankruptcy Search  has not been ordered**

10.      **Patriot Search has not been ordered**

   **Old Republic National Title Insurance Company**                                    Page 3

**SCHEDULE B - SECTION I -- CONTINUED**                    Commitment No.:  **7006582**

11.    **NOTE: PROPERTY IS IN THE NAME OF THE ORGANIC FAMILY TRUST. SAID QUIT
       CLAIM DEED DOES NOT HAVE A FULL DESCRIPTION. ATTACHED IN THE
       PROPERTY APPRAISAL REPORT SHOWING OUR PREMISES IN QUESTION AS
       OWNED BY THE ORGANIC FAMILY TRUST.**

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B - SECTION II

Commitment No.: **7006582**                                                   Effective Date: **May 21, 2011**

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company.

1.      Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the Proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.      Any lien or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

3.      Any encroachments, easements, measurements, variation in area content, party walls or other facts which a correct survey of the premises would show.

4.      Rights of parties in actual possession of all or any part of the premises.

5.      Roads, Ways, Streams or easements, is any, not shown by the public record, riparian rights and the title to any filled in lands.

**Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction:**

**1.      Notwithstanding any provision of the policy to the contrary, the following matters are expressly excepted from the coverage of the policy, and the Company will not pay loss or damage, costs, attorney's fees or expenses that arise by reason of any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the land.**

**2.      Any lien, or right to a lien, for services, labor discrepancies, easements, measurement, encumbrance, violation, variation, adverse circumstance or other state of facts affecting the title that would be disclosed by an accurate and complete survey of the land. The term "encroachments" of existing improvements located on the land onto adjoining land, and encroachments onto the land of existing located on adjoining land.**

**3.      The exact acreage or square footage of the premises will not be insured**

**4.      Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date  the proposed insured acquires for value of record this estate or interest or mortgage thereon covered by this Commitment.**

**5.      Covenants, conditions, restrictions and easements which may exist on the land, if any, appearing in the public records**

**6.      Notwithstanding any provision of the policy to the contrary, the following matters are expressly excepted from the coverage of the policy and the Company will not pay loss or damage, costs, attorney's fees or expenses that arise by reason of any encroachment, encumbrances, violations, variation or adverse circumstance affecting the Title that would be disclosed by an accurated and complete land survey of the land.**

**7.      Any matters listed as requirements on Schedule B-I that are not resolved to the satisfaction of Company will be shown as an exception on final policy**

**8.      Any easements or servitudes appearing in the public records**

**9.      Rights, facts, interests or claims of present tenants, lessees or parties in possession which are not shown by the Public Records, but which could be ascertained by an inspection of said Land or by making inquiry of person in possession thereof.**

**Old Republic National Title Insurance Company**                                          Page 5

**SCHEDULE B - SECTION II -- CONTINUED**                     Commitment No.:  **7006582**

11.      Streams, riparian rights, littoral rights and the title to any filled in lands.


14.      Any taxes, special assessments and governmental liens which become due and payable subsequent to the date of the policy.


                                    Countersigned
                                    **Maverick National Services-Florida, L.L.C.**

                                    By_____


**Old Republic National Title Insurance Company**                              Page 6



# OWNER'S POLICY OF TITLE INSURANCE

Policy Number: **OX** 08397843

Issued by Old Republic National Title Insurance Company

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective

   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

EXHIBIT B

(i)   to be timely, or

   (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10.  Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

Issued through the Office of:

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
*A Stock Company*
*400 Second Avenue South, Minneapolis, Minnesota 55401*
*(612) 371-1111*

By                               *President*

Attest                            *Secretary*

Authorized Signature

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   @.        (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk  6.
@.  2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk  7 or 8.
A.  3. Defects, liens, encumbrances, adverse claims, or other matters
   B.   (a)     created, suffered, assumed, or agreed to by the Insured Claimant;
   C.   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   D.   (c)     resulting in no loss or damage to the Insured Claimant;
   E.   (d)     attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   F.   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
G.  4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   H.   (a) a fraudulent conveyance or fraudulent transfer; or
   I.   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
J.  5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS AND STIPULATIONS

**1.   DEFINITION OF TERMS**

The following terms when used in this policy mean:

@.   (a)   "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

A.   (b)   "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c)   "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

@.   (d)   "Insured": The Insured named in Schedule A.

(i)   The term "Insured" also includes

@.   (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

A.   (B)   successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

B.   (C) successors to an Insured by its conversion to another kind of Entity;

C.   (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

D.   (1)   if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

E.   (2)   if the grantee wholly owns the named Insured,

F.   (3)   if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

(4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

(ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

@.   (e) "Insured Claimant": An Insured claiming loss or damage.

A.   (f)   "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

B.   (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

C.   (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

D.   (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

E.   (j) "Title": The estate or interest described in Schedule A.

F.   (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

@.   **2. CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

@.   **3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title.   If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

@.   **4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a

condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5.   DEFENSE AND PROSECUTION OF ACTIONS

@.   (a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

A.   (b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

B.   (c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

@.   ## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7.   OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

@.   (a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

@.   (i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant

that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

A. (ii)To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

@. **8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

@. (a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

A. (i) the Amount of Insurance; or

B. (ii)the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

C. (b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

D. (i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

@. (c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

@. **9. LIMITATION OF LIABILITY**

A. (a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

B. (b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

C. (c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

@. **10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11. LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

@. **13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

A. (a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b)  The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14.  ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**15.  LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16.  SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17.  CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18.  NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at 400 Second Avenue South, Minneapolis, Minnesota 55401-2499.

EXHIBIT C



**MAVERICK NATIONAL SERVICES, LLC**
SERVING ALL 50 STATES
WWW.MAVERICKNATIONAL.COM

November 16, 2011

<u>Via Facsimile and Certified Mail/Return Receipt</u>
Hay Compere
Mr. J. Bradley Compere
1145 W. 5th Street, Suite 200
Austin. Texas 78703

RE:     Owner Policy No. OX08397844       *6454  Rock Bridge*

Mr. Compere,

We are in receipt of you November 7, 2011 letter regarding the above referenced policy number. I have reviewed the above referenced file, requested that another search be performed to determine the validity of Bank of America's claim that there is a valid lien on title, and our search does not show that a mortgage was ever recorded for this property.   Therefore, Bank of America's assertion of a claim is invalid.

Please do not hesitate to contact me with any questions.

Regards,

Claude D. Rich, Esq.

cc: Revola F. Minter
461 Monteagle Trace
Stone Mountain, GA 30087

Shuping, Morse & Ross LLP
6259 Riverdale Road, Suite 100
Riverdale, Georgia 30274

EXHIBIT C